IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   BOSTON SCIENTIFIC CORP.
         PELVIC REPAIR SYSTEM
         PRODUCTS LIABILITY LITIGATION            MDL No. 2326

THIS DOCUMENT RELATES TO

*Marsie Shelton v. Boston Scientific Corporation*   Civil Action No. 2:17-cv-00599

MEMORANDUM OPINION & ORDER

Pending before the court is Defendant's Motion to Dismiss with Prejudice [ECF No. 12] filed by Boston Scientific Corporation ("BSC"). Plaintiff's counsel has responded to the Motion [ECF No. 13], and the matter is now ripe for decision. For the following reasons, BSC's Motion is **GRANTED in part** to the extent that it seeks dismissal, but **DENIED** to the extent that it seeks dismissal with prejudice.

I.   Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are nearly 25,000 cases currently pending, over 6,000 of which are in the BSC MDL, MDL 2326. Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' discovery responsibilities. Pretrial Order ("PTO") # 171, for example, required each Wave 3 plaintiff to serve

expert disclosures on defendants by October 18, 2017. PTO # 171, at 1 [ECF No. 10]. The instant plaintiff, however, did not comply with PTO # 171 in that she wholly failed to submit her expert disclosures. On this basis, BSC now moves for dismissal of the plaintiff's case with prejudice.

## II. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, containing thousands of individual cases in the aggregate, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move

thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *Id.* at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

III. Discussion

Pursuant to PTO # 171, each Wave 3 plaintiff was required to submit expert disclosures to defendants by October 18, 2017. PTO # 171, at 1. Here, according to

3

BSC, the plaintiff "failed to submit her expert disclosure without any justification for that failure and without seeking leave of Court or an extension of time from [BSC]." Def.'s Mot. to Dismiss 2. As of the date of this Order, the plaintiff has not submitted her expert disclosures, making them more than 63 days late. Accordingly, BSC seeks dismissal of the plaintiff's case with prejudice. Plaintiff's counsel responds that the reason for plaintiff's noncompliance with PTO # 171 is counsel's inability to obtain any response or cooperation from their client, despite numerous attempts. Under these circumstances, plaintiff's counsel argues that dismissal without prejudice would be a more appropriate sanction.

Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that dismissal without prejudice is appropriate in this case. The first factor, bad faith, is difficult to ascertain, given that plaintiff's counsel has not had recent contact with the plaintiff. However, counsel's inability to contact the plaintiff is not an excuse and instead indicates a failing on the part of the plaintiff, who has an obligation to provide counsel with any information needed to prosecute her case, including up-to-date contact information. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Furthermore, as set forth in PTO # 4, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." PTO # 4 ¶ C, No. 2:12-md-02326 (Apr. 17, 2012) [ECF No. 103]. This includes awareness of and good faith attempts at compliance with all

4

PTOs and other court orders. The plaintiff nevertheless failed to comply with the agreed upon discovery deadlines. Although these failures do not appear to be callous, the fact that they were blatant and in full knowledge of the court's orders and discovery deadlines leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also leans toward the order of sanctions. Without the plaintiff's expert disclosures, BSC is unable to mount an adequate defense to the plaintiff's claims. Furthermore, because BSC has had to divert its attention away from timely plaintiffs and onto this case, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2326.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. In fact, the court expects to have to evaluate and dispose of a significant number of motions similar to the one at bar, thereby directing its time and resources to noncompliant plaintiffs at the expense of other plaintiffs in this MDL. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of

establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

Application of the first three factors demonstrates that this court would be justified in dismissing the plaintiff's case. And, given the plaintiff's apparent desertion of her case, imposing any lesser sanction would likely be futile. Thus, in consideration of the fourth factor—the effectiveness of less drastic sanctions—I find that less drastic sanctions are not adequate. The plaintiff's failure to cooperate with, or even respond to, her counsel, coupled with her failure to comply with discovery deadlines, demonstrate a complete lack of interest in prosecuting her case. Under these circumstances, lesser sanctions are not appropriate.

## IV. Conclusion

It is **ORDERED** that BSC's Motion [ECF No. 12] is **GRANTED in part** to the extent that it seeks dismissal, but **DENIED** to the extent that it seeks dismissal with prejudice. The plaintiff's case is **DISMISSED without prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 21, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE